## UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | 100 EAST FIFTH STREET, ROOM 540 | |
|---|---|---|
| Deborah S. Hunt | POTTER STEWART U.S. COURTHOUSE | Tel. (513) 564-7000 |
| Clerk | CINCINNATI, OHIO 45202-3988 | www.ca6.uscourts.gov |

Filed: June 30, 2020

Mr. Brian Joseph Butler
Mr. Daniel James Treadaway
Mezibov Butler
615 Elsinore Place, Suite 105
Cincinnati, OH 45202

Mr. Robert Douglas Todd
Law Office
8878 Red Lion 5 Points Road
Springboro, OH 45066

Re: Case No. 19-4214, *Sherryl Darby v. Childvine, Inc., et al*
Originating Case No. : 1:18-cv-00669

Dear Counsel,

   The court today announced its decision in the above-styled case.

   Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

                           Yours very truly,

                           Deborah S. Hunt, Clerk

                           Cathryn Lovely
                           Deputy Clerk

cc: Mr. Richard W. Nagel

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0196p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

SHERRYL DARBY,

    *Plaintiff-Appellant,*

    *v.*

CHILDVINE, INC.; TYLER MAYHUGH; SAMANTHA BLIZZARD,

    *Defendants-Appellees.*

No. 19-4214

---

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 1:18-cv-00669—Michael R. Barrett, District Judge.

Argued: June 10, 2020

Decided and Filed: June 30, 2020

Before: GRIFFIN, THAPAR, and READLER, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Brian J. Butler, MEZIBOV BUTLER, Cincinnati, Ohio, for Appellant. Robert D. Todd, THE LAW OFFICE OF ROBERT D. TODD, LLC, Springboro, Ohio, for Appellee. **ON BRIEF:** Brian J. Butler, Daniel J. Treadaway, MEZIBOV BUTLER, Cincinnati, Ohio, for Appellant. Robert D. Todd, THE LAW OFFICE OF ROBERT D. TODD, LLC, Springboro, Ohio, for Appellee.

---

**OPINION**

---

    CHAD A. READLER, Circuit Judge. Sherryl Darby underwent a double mastectomy following diagnosis of the growth of abnormal pre-cancerous cells along with a genetic mutation

that contributes to abnormal cell growth. Invoking the Americans with Disabilities Act and Ohio law, Darby alleges she was discriminated against when her employer terminated her employment upon learning of her condition. The district court dismissed her claims, concluding that Darby's genetic mutation had not yet manifested into a disability cognizable under the ADA. Because Darby has plausibly alleged a condition covered by the ADA, we **REVERSE**.

## BACKGROUND

Childvine hired Darby as an administrative assistant at its day care facility in Springboro, Ohio. Not long into her tenure, Darby made a request for time off to deal with a health issue. Darby says she notified her supervisor, Tyler Mayhugh, a director at Childvine, that she had recently been diagnosed with breast cancer, and that she was scheduled for a double mastectomy later that month. According to Darby, Mayhugh balked at the idea, expressing doubt about whether Childvine would allow Darby to remain employed when her surgery date fell within her 90-day probationary period. Mayhugh asked Darby to delay the surgery. Afraid of losing her job, Darby agreed to move the procedure to the day after her probationary period expired.

Doing so apparently did not satisfy Mayhugh or Samantha Doczy, Childvine's co-owner. When told of the new date, the two allegedly "harassed" Darby about the length of her leave request. Doczy later approved Darby's request to use her vacation and sick time to recover from the procedure. When Darby contacted Mayhugh in late October, following her surgery, about returning to work in early November, Darby was told to bring a medical release.

Yet when Darby returned to work, release in hand, Mayhugh explained that Childvine had already sent Darby a letter informing her of her termination. The letter, which Darby received days later, stated that her employment was terminated effective October 24th, the last day of her probationary period. The reasons listed for Darby's termination included an "unpleasant" attitude, dress code violations, and "being unable to work."

Darby filed suit alleging that Childvine violated her rights under the ADA, and that the company along with Mayhugh and Doczy (collectively, "Childvine") violated her rights under Ohio law. In her complaint, Darby alleged that the reasons given for her termination were

No. 19-4214   *Darby v. Childvine, Inc., et al.*   Page 3

pretextual, noting that she was never disciplined for behavior issues during her tenure at Childvine.

While addressing Childvine's various motions to dismiss, the district court allowed discovery to proceed. Early discovery proved revealing. In reviewing Darby's medical records, Childvine learned that Darby was never diagnosed with cancer. Childvine in turn informed the court that Darby's records revealed at most a family history of cancer and a genetic mutation known as a BRCA1 mutation. The district court ordered Childvine to resubmit its motion to dismiss with the new details. Responding to that renewed motion, Darby faulted Childvine for relying upon information outside the complaint. But at the same time, "in an effort to resolve [the] issue," Darby expressed a willingness to admit that her impairment was "a pre-cancerous genetic mutation, not advanced breast cancer." Darby thus requested leave to amend her complaint "specifically" to reflect eight admissions:

> [T]he evidence produced in discovery establishes that (1) Ms. Darby attended a routine appointment with her OBGYN; (2) the OBGYN found an epithelial cell abnormality; (3) the doctor referred her for genetic testing; (4) the genetic testing resulted in a positive match for the BRCA1 gene; (5) the BRCA1 gene is an impairment that substantially limits normal cell growth; (6) because of the positive match, Ms. Darby's doctors urged her to undergo a double mastectomy; (7) Ms. Darby elected to follow the medical advice and underwent the surgery; and (8) Childvine terminated Ms. Darby's employment very shortly after undergoing her surgery.

In reply, Childvine stipulated to Darby's proposed amendment.

Without formally granting leave for Darby's amendment, the district court proceeded to the merits of Childvine's motion "on the premise that the operative complaint incorporates [Darby's eight admissions]." Taking up the motion, the district court concluded that Darby had "offered no statutory, regulatory, or caselaw support for her [argument] that the BRCA1 gene, like cancer itself, is a physical impairment that substantially limits normal cell growth." Nor, the court noted, had its own research revealed evidence that the mutation substantially limited normal cell growth. Viewing Darby's genetic mutation as akin to "the absence of cancer," and noting that "the definition of physical impairment" does not "include a condition that might lead

to [breast cancer] in the future," the district court granted Childvine's motion, and dismissed the case. Darby filed a timely appeal.

## ANALYSIS

I. Before considering the merits of Darby's ADA claim, we first address three threshold issues, each of which relates to the odd manner in which Darby litigated the matter below, which created understandable challenges for the district court. One, contrary to Darby's suggestion, the district court was not required to convert Childvine's motion to dismiss into one for summary judgment under Federal Rule of Civil Procedure 12(d). The district court, with Childvine's blessing, deemed Darby's stipulation to be part of her operative complaint, meaning it did not consider matters outside the pleadings. Fed. R. Civ. P. 15(a). Any confusion over the matter seemingly was the result of Darby erroneously stating in her initial complaint that she had breast cancer.

Two, Darby asserts that her stipulation was only a "short summary" of her proposed amendment, suggesting that she was unable to fully present the issue to the district court. But Darby has not identified any further allegations she would have added through a more formal amendment. And as she offered her stipulation, in her own words, in an effort to "resolve" the tension between her medical records and her complaint, the district court's resolution of that issue was done at her invitation, not over her objection. *See United States v. Demmler*, 655 F.3d 451, 458–59 (6th Cir. 2011) (noting that "courts prevent a party from inducing an erroneous ruling and later seeking to profit from the legal consequences of having the ruling set aside" (quoting *Harvis v. Roadway Exp. Inc.*, 923 F.2d 59, 61 (6th Cir. 1991)).

Three, it is perhaps unclear whether Darby pled a failure to accommodate claim separate from her wrongful termination claim at the heart of her complaint. With respect to an accommodation due to her surgery, Darby's complaint alleges that Childvine granted her request for time off. And when questioned at oral argument, Darby seemed to disavow any accommodation claim separate from her termination. We leave it to the district court to sort out the matter on remand, should the parties disagree on the nature of Darby's claims going forward.

Now on to the merits.

II. We review de novo a district court's grant of a motion to dismiss for failure to state a claim. *Johnson v. Morales*, 946 F.3d 911, 917 (6th Cir. 2020). At this stage, we consider whether the complaint states a claim for relief that is plausible, when measured against the elements of an ADA claim. *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 345–46 (6th Cir. 2016). To survive a motion to dismiss, in other words, Darby must make sufficient factual allegations that, taken as true, raise the likelihood of a legal claim that is more than possible, but indeed plausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

1. Title I of the ADA prohibits employers from discriminating against a qualified individual because of a disability. 42 U.S.C. § 12112(a); 29 C.F.R. § 1630.2(b), (e). To state a claim of discrimination under the ADA, Darby must plead facts that make plausible the inference that (1) she is disabled, (2) she is qualified to perform her job requirements with or without reasonable accommodation, and (3) she would not have been discharged but for the disability. *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 321 (6th Cir. 2012) (en banc); *Donald v. Sybra, Inc.*, 667 F.3d 757, 763 (6th Cir. 2012); *Frengler v. Gen. Motors*, 482 F. App'x 975, 976 (6th Cir. 2012). The key point of contention between the parties is whether Darby has met the first prong—that is, whether Darby's genetic mutation constitutes a disability under the ADA. Darby argues her condition so qualifies because it is "a physical or mental impairment that substantially limits one or more [of her] major life activities." 42 U.S.C. § 12102(1)(A). To our knowledge, this is an issue of first impression at the circuit level.

Section 12102(1)(A) and its supporting regulations broadly define the term "disability" for purposes of the ADA. Consider the three major aspects of that definition: "physical or mental impairment," "substantially limits," and "major life activities."

"*Physical or mental impairment*" is defined in federal regulations to include "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems." 29 C.F.R. § 1630.2(h)(1). The "degree of functional limitation required for an impairment to constitute a disability" does not "create a demanding standard." 29 C.F.R. pt. 1630, App. § 1630.2(j)(1)(iv). The "disability determination [thus is] an appropriate

threshold issue but not an onerous burden for those seeking to prove discrimination under the ADA." *Id.*

"*Substantially limits*" is a relative term, one defined in relation to a person's ability to perform a major life activity "as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). An impairment "need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." *Id.*

"*Major life activities*" include a non-exhaustive list of activities, including, among other things, caring for oneself, performing manual tasks, and interacting with others. 29 C.F.R. § 1630.2(i)(1)(i), (2). Amendments to the ADA in 2008 sweep even more broadly, adding to that list any "operation of a major bodily function, including . . . normal cell growth." 42 U.S.C. § 12102(2)(B); 29 C.F.R. § 1630.2(i)(1)(ii).

And for cases on the margin, the Act includes a "rule of construction" that tips in favor of coverage. It instructs that the definition of disability "shall be construed in favor of broad coverage of individuals . . . to the maximum extent permitted by the terms" of the ADA. 42 U.S.C. § 12102(4)(A).

2. Utilizing this definitional framework, we ask the following: Has Darby plausibly alleged that her impairment substantially limits her normal cell growth as compared to the general population due to both a genetic mutation (BRCA1) that limits her normal cell growth *and* a medical diagnosis of abnormal epithelial cell growth serious enough to warrant a double mastectomy? Interpreting the ADA "to the maximum extent permitted by [its] terms" in Darby's favor, 42 U.S.C. § 12102(4)(A), the answer is yes, for purposes of Rule 12(b)(6).

In her complaint, as amended by her stipulation, Darby alleges both a genetic mutation that limits normal cell growth and the growth of abnormal cells. Darby further alleges her condition was serious enough to warrant an invasive corrective procedure. Taking all of that together, it is at least plausible that Darby is substantially limited in normal cell growth "as compared to" the general population. *See Lonergan v. Fla. Dep't of Corr.*, 623 F. App'x 990, 993 (11th Cir. 2015) (finding plaintiff successfully alleged a substantial limitation in major life

No. 19-4214                   *Darby v. Childvine, Inc., et al.*                   Page 7

activity of normal cell growth in part due to allegation of "abnormal growth of pre-cancerous cells"). The ADA's implementing regulations cite cancer as a condition that, "at a minimum," will qualify as an impairment that substantially limits a major life activity. 29 C.F.R. § 1630.2(j)(3)(iii). And that language, to our eye, appears to set a floor, not a ceiling. *See id.* ("[I]t should easily be concluded that . . . at a minimum . . . cancer substantially limits normal cell growth."). It is thus at least plausible, at this stage, that Darby's gene mutation and abnormal cell growth, though not cancerous, qualify as a disability under the ADA.

Having satisfied Rule 12(b)(6)'s pleading obligations, Darby's claims are entitled to further consideration through discovery. Particularly with less-well-understood medical issues like the BRCA1 genetic mutation and its effects on "abnormal epithelial cells," expert medical testimony may help reveal whether Darby's condition "substantially limits" normal cell growth. *See Baum v. Metro Restoration Servs., Inc.*, 764 F. App'x 543, 546 (6th Cir. 2019) (noting that uncommon conditions typically need expert testimony to support a finding that they substantially limit a major life activity and granting summary judgment to defendant in the absence of such testimony). Discovery will likewise allow Childvine to test its factual allegation that "[t]he BRCA1 derived protein has nothing to do with 'normal cell growth,'" and that it "instead . . . acts to repair damaged DNA in abnormal cell growth," and thus "only increases the risk that potential DNA damage in the future might not be repaired correctly."

On this point, it bears noting that both parties cite *Bragdon v. Abbott*, 524 U.S. 624 (1998), as grounds for their respective positions on appeal. In *Bragdon*, the Supreme Court held that infection with the HIV virus alone, even in the absence of the development of AIDS, was a disability under the ADA. *Id.* at 631. Whether a diagnosis of HIV is an apt analogy for the genetic issues experienced by Darby is a fair point of debate. For today's purposes, it is enough to note that *Bragdon* was decided at summary judgment, not the pleading stage, thereby allowing the courts to consider more developed medical and factual evidence regarding the condition at hand. *See id.* at 639 (explaining that the evaluation of medical evidence led the Supreme Court to conclude that the infection substantially limited a major life activity). That is wise counsel here too.

No. 19-4214 *Darby v. Childvine, Inc., et al.* Page 8

3. In dismissing Darby's complaint, the district court emphasized Darby's "absence of" cancer, describing her condition as one "that might lead to a disability in the future," but not a current disability under the ADA. We agree that a genetic mutation that merely predisposes an individual to other conditions, such as cancer, is not itself a disability under the ADA. The terms of the Act do not reach that far. *See Shell v. Burlington N. Santa Fe Ry. Co.*, 941 F.3d 331, 335–36 (7th Cir. 2019) (finding no ADA disability where plaintiff based his claim on conditions he feared he would develop as a result of obesity). That understanding is consistent with the holding in *Bragdon* that HIV qualifies as a disability under the ADA because of its immediate effect on white blood cells and bodily functions, not because it will eventually develop into AIDS. 524 U.S. at 637. To qualify as a disability, in other words, a condition must substantially limit a major life activity, not merely have the potential to cause conditions that do. And a genetic mutation that is merely capable of altering normal cell growth cannot be an impairment that presently "substantially limits" that growth. By the clear terms of the ADA, a plaintiff must allege more than a genetic mutation capable of interfering with normal cell growth to survive a motion to dismiss. Darby has done so.

The narrow aspect of both the issue before us and our holding deserves emphasis. With respect to the relevant statutory framework, Darby's federal claim was pursued only under the ADA, not under the Genetic Information Nondiscrimination Act or another federal statute. *Cf.* 42 U.S.C. 2000ff-1(a)(1) (forbidding termination of employment "because of genetic information with respect to the employee"). And as to that ADA claim, we do not decide whether Darby's condition in fact falls under the ADA's definition of a disability. We do not decide whether Darby's pre-cancerous cells at issue constitute a substantial limitation on her normal cell growth. Nor do we decide whether those pre-cancerous cells were caused by Darby's genetic mutation. Resolution of those issues requires consideration of matters beyond the four corners of Darby's complaint. While reference to additional sources might yield a second opinion on these medical questions, Darby's factual allegations are sufficient to survive a motion to dismiss. Far more, however, will be required at summary judgment. *See Whitfield v. Tennessee*, 639 F.3d 253, 258–59 (6th Cir. 2011).

No. 19-4214                     *Darby v. Childvine, Inc., et al.*                     Page 9

4. Darby has also satisfactorily pled the remaining aspects of her claim. In her complaint, Darby alleges she was qualified to perform the essential functions of the administrative assistant position with a reasonable accommodation. She likewise plausibly alleges that her termination would not have occurred but for her disability. And while the temporal proximity between Darby's disclosure of her condition and her termination, standing alone, may not be enough to infer a causal link, Darby alleges specific facts beyond temporal proximity. *See Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 737 (6th Cir. 2006) ("Although temporal proximity itself is insufficient to find a causal connection, a temporal connection coupled with other indicia of [causation] may be sufficient to support a finding of a causal connection."). Darby asserts that immediately upon notifying Childvine of her condition and scheduled surgery, her supervisors suggested that her employment may be terminated as a result. Even after Darby rescheduled her surgery, she alleges she was "harassed" by her supervisors due to the length of her leave request. Further, Darby alleges she was pulled aside immediately after returning to work and notified of her termination. And she alleges she was told that her termination had been planned for the day before her surgery, even though she was asked to get a medical release to return to work. These allegations make a causal link between Darby's disability and her termination at least plausible.

III. Due to its dismissal of Darby's federal claim, the district court declined to decide her state law claim. As a result, the parties have not fully briefed here any distinctions between Ohio law and the ADA. We thus remand that issue to the district court, which can consider Darby's state claim in the first instance. *Baker v. Sunny Chevrolet, Inc.*, 349 F.3d 862, 866 (6th Cir. 2003) (noting that we "typically refrain from considering issues not passed upon" by the district court unless the "proper resolution is beyond doubt").

\*     \*     \*     \*     \*

The judgment of the district court is **REVERSED**, and the case is **REMANDED** for proceedings consistent with this opinion.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 19-4214

SHERRYL DARBY,

    Plaintiff - Appellant,

v.

CHILDVINE, INC.; TYLER MAYHUGH; SAMANTHA BLIZZARD,

    Defendants - Appellees.

> FILED
> Jun 30, 2020
> DEBORAH S. HUNT, Clerk

Before: GRIFFIN, THAPAR, and READLER, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is REVERSED, and the case is REMANDED for further proceedings consistent with the opinion of this court.

ENTERED BY ORDER OF THE COURT

Deborah S. Hunt, Clerk